John L. Flynn, J.
A Referee to sell in an action to foreclose a mortgage on real property, having sold the premises and received the proceeds, now finds it necessary to apply to this court for instructions with respect to the disposition of the funds in his possession. Plaintiff’s counsel has served upon the Referee a schedule of payments to which it claims to be entitled, consisting of some 23 items, aggregating a total sum of $34,623.14. Counsel for defendant Di Benedetto has in turn served notice on the Referee objecting specifically to 22 of the 23 items, and in addition making general objection to the payment by the Referee of any sums “ which exceed $28,015.91 Curiously enough, both counsel now ensconced behind their respective barriers of objections and counter-assertions, maintain that this application by the Referee is needless and wholly unnecessary and made “ for the purpose of the Referee’s application for an additional allowance
I do not view it so. I consider the Referee, beset by the conflicting claims of counsel, had ample justification for appealing to the court for instructions.
The action was brought to foreclose a mortgage in the face amount of $35,200, given by defendant 4487 Third Avenue Corp. to the plaintiff Major Capital Corp. At the time the mortgage was about to be executed there was then in existence affecting the property a first mortgage held by Excelsior Savings Bank, and a second mortgage held by the defendant Di Benedetto. Di Benedetto subordinated his mortgage at that time to the mortgage given to the plaintiff. On commencement of this action Di Benedetto appeared and answered to the complaint. On motion for summary judgment the answer was stricken, and on appeal to the Appellate Division summary judgment was affirmed, it being further directed that “ the amount of plaintiffs’ mortgage to which appellant subordinated his mortgage, in the light of the facts and the subordination agreement herein, is to be ascertained by the Official Referee ” (3 A D 2d 1001).
After the taking of testimony, the Official Referee found that there had been subordination only to the extent of $28,000, and upon confirmation of the report by the Referee, judgment of foreclosure and sale was duly entered which adjudged “ that the mortgage of the defendant Richard Di Benedetto is subject and subordinate to the mortgage lien of the plaintiffs herein only to the extent or amount of $28,015.91, with interest on said sum from February 15, 1958 to the date of sale herein.” The judgment also adjudged that plaintiffs were entitled to judg *1054 meat for $35,940.99. Clearly the court, upon equitable considerations, considered the lien of Major Capital Corp. to be divided into two parts: one part to the extent of $28,000 was to be deemed a lien senior and superior to the lien of the Di Benedetto mortgage; the remaining part was to be deemed a lien upon the property junior to the Di Benedetto mortgage.
The premises were sold at public auction on October 23, 1958 for $40,000, subject to the existing first mortgage held by Excelsior Savings Bank. Closing of title, and delivery of the deed did not take place until November 24, 1958, at which time the Referee received the balance of the purchase price, and after payment of taxes, assessments and water charges which were liens of record, a balance of $37,849.85 remained in his hands.
Counsel for Di Benedetto contends that the Referee, subject only to payment of his fees and the advertising expenses, is required to make payment to Major Capital Corp. of only $28,015.91, with interest to date of sale, retaining the balance for payment of the Di Benedetto mortgage, upon which there is now due a balance of approximately $9,922.50. This is disputed by counsel for plaintiffs, who point to language in the judgment reading as follows: “ That said Referee shall also pay to the plaintiff or plaintiff’s attorneys such sum or sums as have accrued and been paid by the plaintiff for taxes, assessments, water charges, sewer rents, fire insurance premiums and installments of principal and interest due on any prior mortgage covering the premises under foreclosure to the date of the sale of the mortgaged premises, together with interest thereon from the date of such payments insofar as such moneys will pay the same, upon proof of such payments and on production of receipts therefor.”
Counsel for plaintiff claims that in order to preserve the security plaintiff has been compelled to advance substantial sums for the payment of principal and interest on a prior mortgage, for taxes, and for insurance premiums, and pursuant to the provisions of the judgment there ought to be reimbursement of these advances to be paid to plaintiff in addition to the sum of $28,015.91.
Were this mortgage physically divided, so that we were in fact dealing with entirely separate and distinct liens, one senior to the lien of the Di Benedetto mortgage in the sum of $28,015.91 and being now foreclosed, and the other junior to the lien of the Di Benedetto mortgage and in the sum of $7,200, equitable considerations would compel me to hold that plaintiff in the action to foreclose the $28,015.91 mortgage lien would be entitled to *1055 reimbursement from the proceeds of the sale of advances necessarily made to preserve the security, such as payments for taxes, for interest and principal due on a prior mortgage, and for fire insurance premiums. I consider the situation at bar to be not different and I therefore instruct the Referee to reimburse plaintiff for such advances out of the funds in his possession in accordance with the terms of the judgment.
There is a substantial area of dispute between counsel over the meaning of the word ‘1 sale ’ ’. Counsel have adopted opposite positions as the word applies to (a) payment of interest on the sum of $28,015.91, (b) payment of the costs and disbursements as taxed together with the extra allowance contained in the judgment, (c) payment of interest on the advances for principal and interest on the prior mortgage, (d) payment of taxes and (e) payment of fire insurance premiums and interest thereon. Preoccupied with criticism of the Referee, counsel have failed to provide the court with any authorities to sustain their respective positions. The court, conducting its own research, has become familiar with a number of cases which interpret the word “ sale ” to mean the auction sale and not the date of closing. (Fletcher v. 416 West 33 St. Realty Co., 77 Misc. 280; Coudert v. Huerstel, 60 App. Div. 83; Wagner v. White, 225 App. Div. 227; 15 Carmody-Wait, New York Practice, § 342, p. 482.)
It should be noted, however, that these cases concerned the use of the words 16 at the time of sale ” in a clause of different context — more often a part of the terms of sale, which required the Referee to pay out of the proceeds of sale such taxes, assessments or water charges which may have become liens 1 ‘ at the time of the sale ”. In view of the fact that we are now dealing with the words ‘ ‘ time of sale ” in an entirely different context, I do not regard the afore-mentioned cases to be controlling.
It should not be forgotten that a foreclosure action is an equitable one. The court should ‘ ‘ direct its officer to act in accordance with fairness and equity ’ ’. (Lane v. Chantilly Corp., 251 N. Y. 435, 437.) It is equitable and fair that the foreclosing plaintiff should be reimbursed for his necessary advances to preserve the security together with interest on such advances to the date of closing of title and delivery of the deed. I therefore direct the Referee to allow interest to the date of closing on the following sums to be paid to the plaintiff: on the principal balance of $28,015.91; on installments of principal and interest on the prior mortgage advanced by plaintiff; on taxes paid by plaintiff; and on fire insurance premiums paid by plaintiff, from the date of such payment.
*1056 In dispute between the parties are the applicable interest dates for payment of costs and disbursements as well as the additional allowances to plaintiff, as contained in the judgment. I hold these costs are payable with interest thereon from June 30, 1958, the date of the judgment, to November 24, 1958, the date of closing of title.
Reimbursement of fire insurance premiums presents another field for disagreement between counsel. At the time of the reference to compute the amount due under the mortgage indebtedness, certain fire insurance bills in the sum of $764.75 were presented to the Referee and disallowed because it was shown they had not been paid by plaintiff. This of course was correct. However, plaintiff has since paid such bills and now seeks reimbursement. I consider it to be fair and equitable that plaintiff be reimbursed for such payments. They were made to preserve the property. Moreover, in view of section 240-a of the Real Property Law, it was necessary for plaintiff to maintain fire insurance on the premises up to the time of closing of title. (New York Med. Coll. v. 15-21 East 111th St. Corp., 90 N. Y. S. 2d 591.) Accordingly I direct the Referee to reimburse the plaintiff for the cost of fire insurance necessary to protect the premises up to the time of closing. Such payments by the Referee, of course, shall be contingent upon proof that they were made and on production of receipts therefor, as the judgment directs.
There is dispute between counsel with respect to the payment of premiums for a receiver’s qualifying bond and a receiver’s liability bond. Apparently plaintiff procured an order to be made appointing a receiver, but as far as can be seen the receiver did not act nor were any moneys collected by him. Ordinarily the cost of such bonds would be paid by the receiver in the performance of his duties and out of collections made by him. No facts have been presented that would aid the court in passing upon the request of plaintiff’s counsel that such premiums be paid. In the circumstances I disallow this claim for reimbursement.
The Referee requests an additional allowance, pursuant to section 1546 of the Civil Practice Act. It is regrettable that counsel on both sides have found so little in this litigation they could agree upon. Their intransigeant positions have placed a heavy burden on the Referee and compelled him to perform unusual and exceptional services. The circumstances justify an additional allowance, and the Referee is allowed an additional sum of $500 for his services.